DERBY OIL CO. v. MOTTER, Collector of Internal Revenue.

(District Court, D. Kansas, Second Division. March 26, 1925.)

No. 626.

1. **Internal revenue** ⬅9—Oil refinery held not subject to transportation tax; "transportation."

A corporation operating a petroleum refinery in or near a producing field, which obtains its crude oil through its own small gathering pipe lines running to the wells, is not engaged in the business of transporting oil, but its "transportation" is merely incidental to and a part of its refinery business, and it is not subject to the tax imposed by Revenue Act 1918, § 500, subd. (e), being Comp. St. Ann. Supp. 1919, § 6309⅓a, subd. (e).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transport—Transportation.]

2. **Internal revenue** ⬅9—Oil refinery held not subject to transportation tax.

If such corporation be considered a carrier of oil by pipe line, it is exempted from the tax by Revenue Act 1918, § 501, subd. (c), being Comp. St. Ann. Supp. 1919, § 6309⅓b, subd. (c), providing that nothing in the preceding section shall be construed as imposing a tax "(1) upon the transportation of any commodity which is necessary for the use of the carrier in the conduct of its business as such and is intended to be so used or has been so used."

At Law. Action by the Derby Oil Company against H. H. Motter, Collector of Internal Revenue for the District of Kansas. On the merits. Judgment for plaintiff.

C. G. Yankey, of Wichita, Kan., John H. Brennan, of Tulsa, Okl., and L. P. Brooks, of Wichita, Kan., for plaintiff.

Al F. Williams, U. S. Atty., and Alton H. Skinner, Asst. U. S. Atty., both of Topeka, Kan., and Nelson T. Hartson and Chas. T. Hendler, Associate Solicitors of Internal Revenue, both of Washington, D. C., for defendant.

POLLOCK, District Judge. This is an action at law, brought by plaintiff to recover from defendant certain taxes paid by plaintiff under protest. A demand for refund of same having been made and denied, this action was brought. The taxes were assessed by the government against the plaintiff under the provisions of the Act of February 24, 1919. By stipulation the amount of recovery, if allowed to plaintiff, is fixed by stipulation of parties at $6,590.18, with interest thereon from date paid.

[1] The question presented arises in this manner. The plaintiff was engaged at the time the tax was laid in the business of producing oil in the field in Butler county, this state, from its own wells, conducting this oil in small 2 and 3 inch pipes about 30 miles to its refinery in Wichita, and there refining the same, and in marketing the refined products. In addition to this it did purchase from tanks in the oil fields some crude oil which was produced by others, and carry the same through its pipes to its refinery, and there use the same in the conduct of its business, the same as the crude oil produced from its own wells. The question presented on this state of facts is: Was the plaintiff liable for the payment of a tax under the provisions of sections 500 and 501, commonly called the law of 1918, the same being the act of Congress of February 24, 1919 (Comp. St. Ann. Supp. 1919, §§ 6309⅓a, 6309⅓b), the pertinent provisions of which said act read as follows:

"1918 Law. Title V.—Tax on Transportation and Other Facilities, and on Insurance.

"Sec. 500. That from and after April 1, 1919, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 500 of the Revenue Act of 1917. * * *

"(e) A tax equivalent to 8 per centum of the amount paid for the transportation on or after such date of oil by pipe line. * * *

"Sec. 501. (a) That the taxes imposed by section 500 shall be paid by the person paying for the services or facilities rendered. * * *

"(c) The taxes imposed by section 500 shall apply to all services or facilities specified in such section when rendered for hire, whether or not the agency rendering them is a common carrier. In case a carrier (other than a pipe line) principally engaged in rendering transportation services or facilities for hire does not, because of its ownership of the goods transported, or for any other reason, receive the amount which as a

carrier it would otherwise charge, such carrier shall pay a tax equivalent to the tax which would be imposed upon the transportation of such goods if the carrier received payment for such transportation, such tax, if it cannot be computed from actual rates or tariffs of the carrier, to be computed on the basis of the rates or tariffs of other carriers for like services as determined by the Commissioner.

"In the case of any carrier (other than a pipe line) the principal business of which is to transport goods belonging to it on its own account and which only incidentally renders services for hire, the tax shall apply to such services or facilities only as are actually rendered by it for hire. Nothing in this or the preceding section shall be construed as imposing a tax (1) upon the transportation of any commodity which is necessary for the use of the carrier in the conduct of its business as such and is intended to be so used or has been so used; or (2) upon the transportation of company material transported by one carrier, which constitutes a part of a railroad system, for another carrier which is also a part of the same system.

"(d) The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made, by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax cannot be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

The Commissioner of Internal Revenue, with the approval of the honorable Secretary of the Treasury, after due consideration of the question, decided the plaintiff, and others conducting a similar business, was liable for the payment of a transportation tax under this law. Hence plaintiff was compelled to and did under protest pay the tax assessed under the act for the period the same remained in force; that is, from April 1, 1919, to December 31, 1921. A claim for refund was made by plaintiff and immediately denied by the government. Hence this action to recover the amount above stated.

The solution of the problem whether the plaintiff was liable under the act for the tax assessed against it must, in my judgment, be arrived at from a consideration of the nature of the business in which plaintiff was engaged at the time the tax was assessed against it, and, having this determined, to then consider whether the business done by plaintiff fell within the provisions of the act. Now, in a consideration of these questions, it must be thought the law-making power acted with a due regard to the natural and fundamental laws of the oil trade and business. This being true, Congress knew, as do all men, it is impossible to locate, build, and operate a refinery at the mouth of each and every producing oil well in an oil field; but, on the contrary, a refinery could be built and operated successfully at one only of two possible locations, either close to the producing field, where an adequate supply of crude oil may be had through small gathering lines run to the wells in the field, as in the case at bar, or in a large distributing center, where the refined products can be readily disposed of, but the crude must be carried a great distance through pipe lines.

In the case first instant, the refined products are transported after the operation of refining is undergone, and a transportation tax is imposed and paid thereon under the act. In the second case, the crude oil is transported to a commercial center before refining, and when refined is there sold on the market, in which case the crude oil is transported and should bear the transportation tax. Now, in the case at bar, the oil company plaintiff is engaged in the business of refining oils. For the purpose of conducting this business it must have a daily constant supply of crude oil. This supply it obtains in the nearby fields through its gathering lines, but its wells, its gathering line, its oil tanks, and all other such appliances are simply a part and parcel of its refinery, and the offices they perform in the business are merely incidental to the actual and only business conducted by the plaintiff; that is to say, the plaintiff is in no just sense a carrier of goods or commodities at all, nor is it engaged in the business of transportation of commodities or goods. It is simply a manufacturer of refined oils from the crude product, which it digs or buys and brings to its plant, in like manner as a lumberman cuts and brings the logs from the forest to his mill, or a smelter the ores dug from the ground to the location of the smelter. Thus viewed, the business of plaintiff did not fall under the category of one engaged in the

business of transportation, and was not within the purview of the act above quoted.

[2] However, should this conclusion as to the true nature of the business in which the plaintiff was engaged be wrong, and the plaintiff should be determined to be a carrier engaged in the business of transportation, and not a refinery engaged in the business of manufacturing, in such case the transportation of the oil in the gathering lines is its principal business, and the act of producing the oil and refining the same are merely incidental, and simply a part and parcel of its main or principal business as a carrier or transporter. But this conclusion, if reached, and which under the facts of this case is not supported by the evidence, the rights of the government to the tax which it claimed and collected is not sustained, but is denied by the express provisions of the act itself, for section 501, subdivision (c), being Comp. St. Ann. Supp. 1919, § 6309⅓b, among other things, prohibits this court, the taxing officers, and all others, from so construing the act in the following language: "Nothing in this or the preceding section shall be construed as imposing a tax (1) upon the transportation of any commodity which is necessary for the use of the carrier in the conduct of its business as such and is intended to be so used or has been so used."

Hence, if the principal business of the plaintiff be considered to have been that of a carrier or transporter of oil, yet as the refining business in such case was incidental to and merely a part and parcel of such business, then the prohibition here found forbids the tax which was levied and paid in this case. Therefore the government was not entitled to the tax under the act in question, and must refund the tax paid as stipulated.

There will be judgment for the plaintiff for the stipulated amount, and interest from date of its payment. It is so ordered.